IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SELECT PORTFOLIO SERVICING, INC., | § § § § | |
| Plaintiff, | | |
| v. | § § § | Civil Action No. 3:22-CV-00101-E |
| ANDREW D KNOWLES and BEVIN L. KNOWLES, | § § § § | |
| Defendants. | § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Motion for Default Judgment filed March 23, 2022 (Plaintiff's Motion). (Doc. 11). Having reviewed the Motion and applicable law, the Court finds that Plaintiff's Motion should be and is hereby **GRANTED** as follows:

**I.     BACKGROUND**

On January 14, 2022, Plaintiff initiated this action against Defendants, related to real property located at 806 Bandera Lane, Garland, Texas, 75040 (Property). (Doc. 1). Plaintiff's Complaint alleges:

> Ernie Dale Knowles ("Decedent") was an obligor under the Loan Agreement described below. Decedent passed away on February 4, 2020. Upon information and belief, no probate is open for Decedent in the county where the Property described below is located. Accordingly, there is no executor or administrator to be made a party in this proceeding as the personal representative of Decedent's estate. Upon information and belief, Decedent died intestate.
> . . . .
> Defendant Andrew D. Knowles, upon information and belief, is an heir and son of the Decedent[]
> . . . .
> Defendant Bevin L. Knowles, upon information and belief, is an heir and daughter of the Decedent
> . . . .

> [R]ights to the entirety of the property are in question, and the value of the property controls. And the value of the Property exceeds $75,000.00. The Dallas County Appraisal District values the Property at $181,600.00 in excess of the jurisdictional minimum.
>
> . . . .
>
> On or about June 24, 2008, for value received Decedent executed that certain Loan Agreement and Disclosure Statement (the "Note") in the original principal sum of $74,400.80, originally payable to American General Financial Services, Inc. ("American"), bearing interest at the rate of 9.22% per annum.
>
> . . . .
>
> Concurrently with the Note, Decedent executed that certain Deed of Trust ("Security Instrument", and together with the Note, "Loan Agreement") as grantor, granting a security interest to American in certain real property and improvements located in Dallas County, Texas, commonly known as 806 Bandera Lane, Garland, Texas 75040, and being further described as follows:
>> BEING LOT 32, IN BLOCK F, NORTHWOOD ESTATES, SECOND INSTALLMENT, AN ADDITION TO THE CITY OF GARLAND, DALLAS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 26, PAGE 235, MAP RECORDS, DALLAS COUNTY, TEXAS.
>
> . . . The Security Instrument was recorded in the official records of Dallas County, Texas on July 11, 2008, under Instrument No. 20080228106.

(Doc. 1 at 1-4). Thereafter, Plaintiff alleges a Corporate Assignment of Deed of Trust was recorded in the Real Property Records of Dallas County, which assigned the Loan Agreement from American to OneMain Financial Group, LLC (OneMain). (Doc. 1 at 4-5). Plaintiff alleges (i) OneMain is the current legal owner and holder of the Note and (ii) Plaintiff is the current servicer of the Loan Agreement on behalf of OneMain. (Doc 1 at 4-5). Plaintiff alleges Decedent failed to make payments on the Note and otherwise failed to comply with the Security Instrument. (Doc. 1 at 5). Plaintiff asserts it mailed a demand letter and notice of default to Decendent's estate and that the default was not cured. (Doc. 1 at 5). Among its claims, Plaintiff specifically pleads for judicial foreclosure.

The Court issued summons on each Defendant. (Doc. 6). Thereafter, Plaintiff filed proofs of service, which show (i) Defendant Andrew D. Knowles was served on January 25, 2022, and (ii) Defendant Bevin L. Knowles was served on February 28, 2022. (Docs. 7, 8). Neither Defendant

filed an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). Plaintiff moved for the Clerk's entry of default on March 22, 2022. (Doc. 9), which the Clerk granted on the same date. (Doc. 10). Plaintiff's Motion and corresponding proposed final judgment seek, *inter alia*, declaratory relief and judicial foreclosure. Defendants did not respond to Plaintiff's Motion. The issue is now ripe for consideration.

## II.    LEGAL STANDARD

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). This policy, however, is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Thus, entry of a default judgment is within the Court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) ("[A] district court has the discretion to decline to enter a default judgment."). The Fifth Circuit looks to the following six factors when considering whether to enter a default judgment: (i) if the default was caused by a good faith mistake or excusable neglect; (ii) if there has been substantial prejudice; (iii) the harshness of a default judgment; (iv) if there are material issues of fact; (v) if grounds for a default judgment are clearly established; and (vi) if the

court would think itself obligated to set aside the default on the defendant's motion. *Lindsey*, 161 F.3d at 893 (holding that a district court did not abuse its discretion when denying a motion for default judgment when these factors weighed against granting the motion).

The determination of whether to enter a no-answer default judgment involves a three-step analysis. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, it must be found that—after service—a defendant failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Second, the Clerk must have entered a default—after default was established by affidavit or otherwise. Fed. R. Civ. P. 55(a). Third, a plaintiff must have applied to the Clerk or the Court for a default judgment and proven entitlement to same. Fed. R. Civ. P. 55(b)(2) ("the party must apply to the court for a default judgment.").

### III.   ANALYSIS

#### A. Whether Defendants Failed to Timely Plead or Otherwise Respond to the Complaint

As a prerequisite for the defendants' obligation to answer or respond to a suit, the Court must determine whether Plaintiff properly served Defendants. Fed. R. Civ. P. 4(c). Regarding service on individuals within a judicial district of the United States, Rule 4(e) provides:

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:
> . . . .
>     (2) doing any of the following:
> . . .
>         (A) delivering a copy of the summons and of the complaint to the individual personally[]

Fed. R. Civ. P. 4(e)(2). Here, the returns of service provide the summons and complaint were served on each Defendant, personally. (Docs. 7, 8). Both Defendants were served within a judicial

district of the United States. Thus, Plaintiff effectively served Defendants in accordance the Federal rules. *See* Fed. R. Civ. P. 4(e)(1). The Court must conclude Plaintiff properly served Defendants.

Despite receiving proper service, the Court's docket and record show Defendants have not filed an answer or other responsive pleading "within 21 days after being served with the summons and complaint." Fed. R. Civ. P. 12(a)(1)(A)(i). To date, neither Defendant has filed an answer nor any responsive pleading in this case. Thus, the Court must also conclude that Defendants failed to timely plead or otherwise respond to the complaint under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

### B. Whether the Clerk Entered a Default in Accordance with Federal Rule of Civil Procedure 55

Regarding entry of a default, Federal Rule of Civil Procedure 55 states:

> **(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

Fed. R. Civ. P. 55(a). As concluded above, Defendants failed to plead or otherwise defend against Plaintiff's claims in this case. *See* Fed. R. Civ. P. 55(a).

Here, Plaintiff supported its request for entry of Clerk's default with a declaration from Plaintiff's counsel, Vivian N. Lopez. (Doc. 11-1). The Lopez declaration declares under penalty of perjury that

> Defendant Andrew D. Knowles was served on January 25, 2022, by delivering a copy of Plaintiff's Original Complaint to him at 1502 E. Orchid Lane, Phoenix, Arizona 85020.
> . . . .
> Defendant Bevin L. Knowles was served on February 28, 2022, by delivering a copy of the Plaintiff's Original Complaint to her at 546 Tacoma Drive, Garland, Texas 75043.
> . . . .

> I further certify that Defendants have failed to serve an answer or other responsive pleading; no extension has been granted or any extension has expired; and Defendants are not infants (under age 21) or an incompetent person.
> Plaintiff and the undersigned have determined that Defendants are not in the military services. Attached as Exhibit A-1 is the Military Status Report for Defendants provided by the Defense Manpower Data Center (DMDC) website pursuant to the Service Members Civil Relief Act, 50 U.S.C. App. 521, § 201.

(Doc. 11-1 at 2-3). The Lopez declaration further attaches status reports from the Department of Defense's Manpower Data Center, which show that Defendants are not in the armed services. (Doc. 11-1 at 5-12). The Lopez declaration is otherwise consistent with the returns of service. (Docs. 7, 8). Upon review of Plaintiff's request for entry of Clerk's default, the corresponding Lopez declaration, and the returns of service, the Court must conclude the Clerk properly entered a default against Defendant in accordance with Rule 55. *See* Fed. R. Civ. P. 55(a).

### C. Whether Plaintiff Applied for and Has Proven Entitlement to Default Judgment

#### i. *Whether an Entry of Default Judgment is Procedurally Warranted*

Demonstrably, Plaintiff has applied for default judgment against Defendants. (Doc. 11). Next, the Court determines whether Plaintiff has proven entitlement to default judgment—beginning with whether default judgment is procedurally warranted under the six *Lindsey* factors. *See Lindsey*, 161 F.3d at 893. First, Defendants have not filed any responsive pleadings, so there exists no material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendants' "'failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.'" *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F.Supp.3d 809, 814 (N.D. Tex. 2015) (quoting *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011)). Third—given that Defendants have had sufficient time to file either an answer to Plaintiff's

complaint or explain why they have not done so—the grounds for default are clearly established. *Cf. Elite v. KNR Grp.*, No. 99-41263, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to suggest Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Plaintiff seeks only the relief the law provides, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp., Inc.*, No. 12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if Defendants were to challenge such a default. *Lindsey*, 161 F.3d at 893. For those reasons, the Court must conclude default judgment against Defendants is procedurally warranted. *Lindsey*, 161 F.3d at 893.

  ii. *Whether There is a Sufficient Basis in the Pleadings for a Default Judgment*

Where, as here, a default has been entered under Rule 55, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016).[1] And, as discussed above, the result of this default is that Defendants have admitted to Plaintiff's well-pleaded allegations of fact. *Nishimatsu*, 515 F.2d at 1206. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for Plaintiff's claims for relief. *Nishimatsu*, 515 F.2d at 1206.

In determining whether there is a sufficient basis in the pleadings for judgment, the Fifth Circuit "draw[s] meaning from the case law on Rule 8." *Wooten v. McDonald Transit Assocs.,*

---

[1] *See generally Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2688 (3d ed. 1998)).

*Inc.*, 788 F.3d 490, 497 (5th Cir. 2015). Factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 497 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," but "detailed factual allegations" are not required. *Wooten*, 788 F.3d at 497 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This "low threshold" is less rigorous than that under Rule 12(b)(6). *Wooten*, 788 F.3d at 498. Recognizing that "a defendant must invoke Rule 12 in order to avail itself of that Rule's protections, [while] a default is the product of a defendant's inaction," the Fifth Circuit has "decline[d] to import Rule 12 standards into the default-judgment context." *Wooten*, 788 F.3d at 498 n.3.

a) Whether Plaintiff has Authority to Foreclose on the Property

At the outset, the Court must determine whether Plaintiff has the authority to administer a foreclosure on behalf of the owner of the note. Provided a mortgage servicer follows Texas Property Code § 51.0025, a mortgage servicer has the authority to foreclose. *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 927 (N.D. Tex. 2014) ("Both the mortgagee and the mortgage servicer have the authority to foreclose.") Texas Property Code § 51.0025 provides:

> A mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if:
> (1) the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer authority to service the mortgage; and
> (2) the notices required under Section 51.002(b) disclose that the mortgage servicer is representing the mortgagee under a servicing agreement with the mortgagee and the name of the mortgagee and:
> (A) the address of the mortgagee; or
> (B) the address of the mortgage servicer, if there is an agreement granting a mortgage servicer the authority to service the mortgage.

Tex. Prop. Code Ann. § 51.0025. Here, Plaintiff attached four sets of documents to its Complaint: (i) the original loan agreement between American and Decedent; (ii) a deed of trust that Decedent

granted to American, as beneficiary; (iii) American's assignment to OneMain; and (iv) the notices of default sent from Plaintiff to the Decedent's estate. Under Rule 8(b)(6), "[a]n allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). The four sets of documents attached to the Complaint are further deemed admitted. *See* Fed. R. Civ. P. 8(b)(6).

The Court takes as true (i) that OneMain owns the Note and is the beneficiary on the Deed of Trust and (ii) that Plaintiff serves as the mortgage servicer of the Loan Agreement for OneMain. (Doc. 1 at 4-5) ("[Plaintiff] is the current servicer of the Loan Agreement on behalf of One Main[]"); (Doc. 1-1).The notices, dated May 24, 2021, provide:

> SPS is acting as the Mortgage Loan Servicer for OneMain Financial Group, LLC, who is the owner of the Note and Deed of Trust associated with your real estate loan. SPS, as Mortgage Loan Servicer, is representing OneMain Financial Group, LLC, whose address is:
> 
> >OneMain Financial Group, LLC
> >C/O Select Portfolio Servicing, Inc.
> >3217 S. Decker Lake Dr., Salt Lake City, UT 84119
>
> SPS is authorized to represent OneMain Financial Group, LLC, by virtue of a servicing agreement. Pursuant to the servicing agreement and Texas Property Code 51.0025, SPS is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above-referenced loan.
> . . . .
> The mortgage on your property is in default as a result of your failure to make payments as required by the Note and Deed of Trust or Mortgage (Security Instrument). . . . . SPS has been instructed on behalf of the owner of the Note and Deed of Trust to pursue remedies under the Security Instrument unless you take action to cure the default before the Cure Date shown below.
> . . . .
> >Select Portfolio Servicing, Inc.
> >PO Box 65277 Salt Lake City, UT 84165-0277

(Doc. 1-1 at 23-24).[2] Thus, the notices—required under Texas Property Code § 51.002—contain both the address of the mortgagee (OneMain) and the mortgage servicer (Plaintiff). *See* Tex. Prop.

---

[2] Plaintiff refers to itself as "SPS."

§ 51.002.[3] Correspondingly, the Court must find and conclude (i) that Plaintiff is a mortgage servicer for OneMain and (ii) that Plaintiff has the authority to foreclose on the Property. *See* Tex. Prop. Code Ann. § 51.0025; *see, e.g.*, *Johnson*, 999 F. Supp. 2d at 927 (discussing mortgage servicer's ability to foreclose); *see also Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 757–58 (N.D. Tex. 2013) (discussing the same).

    b) Judicial Foreclosure

Although Plaintiff asserted several "causes of action" in its Complaint, Plaintiff's Motion enumerates only the elements for "judicial foreclosure." Indeed, Although "judicial foreclosure" is typically viewed as a remedy,[4] courts in the Northern District of Texas have read a breach of contract claim into a judicial foreclosure claim, where only the latter "judicial foreclosure" is pleaded.[5]

> A court in [the Northern] district has held that, although a party "does not expressly identify its breach of contract claim in [a] motion[ ] for summary judgment, its claim is subsumed with its motion requesting judicial foreclosure." *Easterling v. U.S. Bank Nat'l Ass'n*, No. 3:16-cv-3403-L-BH, 2018 WL 7266516, at *14 (N.D. Tex. Dec. 6, 2018), *report and recommendation adopted,* No. 3:16-CV-3403-L, 2019 WL 156264 (N.D. Tex. Jan. 10, 2019); *see also Deutsche Bank Nat'l Tr. Co. for Morgan Stanley Home Equity Loan Tr. 2005-1 Mortgage Pass-Through Certificates, Series 2005-1 v. Newman*, 9:15-cv-127, 2017 WL 3699760, at *3 (E.D. Tex. July 20, 2017), *recommendation adopted by* 2017 WL 3676820 (E.D. Tex. Aug. 24, 2017) (noting that a party's judicial foreclosure claim was a "meritorious cause of action," based upon the opposing party's actions in breaching its contract); *Deutsche Bank Nat'l Tr. Co. v. Mullennix*, No. 4:16CV207-ALM-

---

[3] Texas Property Code § 51.002 enumerates requirements relating to the sale of real property. *See* Tex. Prop. Code § 51.002

[4] *See In re Erickson*, 566 Fed. Appx. 281, 284 (5th Cir. 2014) (unpublished) (holding that the lender "had a right to pursue judicial foreclosure as a remedy"); *U.S. Bank Nat'l Ass'n. v. Ross*, No. H-15-2385, 2017 WL 2730769, at *1 (S.D. Tex. June 26, 2017) (concluding that Plaintiff had not plead a viable claim as is required under Federal Rule of Civil Procedure 8(a)).

[5] The Court notes that, in discussing attorney's fees, Plaintiff's Motion states "Plaintiff is further entitled attorney's fees under Chapter 38 because this is, in part, a suit for a claim listed in Texas Civil Practice and Remedies Code § 38.001—more specifically, breach of contract." (Doc. 11 at 5). But, plaintiff does not otherwise directly address a breach of contract claim.

> KPJ, 2017 WL 4172157, at *1 (E.D. Tex. Aug. 31, 2017), *report and recommendation adopted sub nom. Deutsche Bank Nat'l Tr. Co. for Soundview Home Loan Tr. 2005-OPT3, Asset-Backed Certificates, Series 2005-OPT3 v. Mullennix*, No. 4:16CV207-ALM-KPJ, 2017 WL 4168999 (E.D. Tex. Sept. 20, 2017) (granting the plaintiff's request for a declaratory judgment where "[t]he amended complaint asserts claims for foreclosure and breach of contract, and seeks a declaration from the Court allowing [the plaintiff] to enforce its lien against the Property through foreclosure"); *Pittman v. Seterus, Inc.*, No. 3:14-cv-3852-M (BF), 2016 WL 4791926, at *3 (N.D. Tex. Jan. 8, 2016) (analyzing a judicial foreclosure claim using traditional breach-of-contract elements); *Khoung v. Wilmington Sav. Fund Soc'y, FSB*, No. 417CV00494ALMCAN, 2018 WL 4608603, at *8 n.7 (E.D. Tex. Sept. 7, 2018), *report and recommendation adopted*, No. 4:17-CV-494, 2018 WL 4599551 (E.D. Tex. Sept. 25, 2018) (noting and following the trend toward granting judicial foreclosure claims "based on traditional breach of contract elements"); *McElroy v. HSBC Bank USA, Nat'l Ass'n as Tr. for Nomura Home Equity Loan, Inc.*, No. 4:17-CV-806-ALM-CAN, 2018 WL 5660318, at *9 (E.D. Tex. Oct. 1, 2018), *report and recommendation adopted*, No. 4:17-CV-806, 2018 WL 5636161 (E.D. Tex. Oct. 31, 2018) (granting a defendant's Motion for Summary Judgment on its counterclaim for judicial foreclosure).

*Ocwen Loan Servicing, LLC v. Kingman Holdings, LLC*, No. 3:18-CV-1197-S, 2019 WL 3802167, at *5 (N.D. Tex. May 31, 2019). Similar to *Ocwen*, the Court follows the decisions discussed and quoted above in *Easterling, Pittman, Khoung*, and *McElory*; the Court finds a breach of contract claim subsumed in the pleaded judicial foreclosure claim and that such a reading would satisfy the pleading requirements under Rule 8(a). *See* Fed. R. Civ. P. 8(a); *see, e.g.*, *Easterling v. U.S. Bank Nat'l Ass'n*, No. 3:16-cv-3403-L-BH, 2018 WL 7266516, at *14 (N.D. Tex. Dec. 6, 2018), *report and recommendation adopted,* No. 3:16-CV-3403-L, 2019 WL 156264 (N.D. Tex. Jan. 10, 2019).[6] Additionally, as pleaded, Plaintiff's claims for declaratory judgment are further subsumed into the breach of contract claim. "Declaratory judgment [is a] form[] of relief based on underlying claims." *Johnson*, 999 F. Supp. 2d at 935 (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN),* 915 F.2d 167, 170–71 (5th Cir.1990)); *see, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Mullennix*, No. 4:16-CV-00207-ALM-KPJ, 2017 WL 4172157, at *1 (E.D.

---

[6] The Court further notes that

Tex. Aug. 31, 2017), *report and recommendation adopted sub nom. Deutsche Bank Nat'l Tr. Co. for Soundview Home Loan Tr. 2005-OPT3, Asset-Backed Certificates, Series 2005-OPT3 v. Mullennix*, No. 4:16-CV-00207-ALM-KPJ, 2017 WL 4168999 (E.D. Tex. Sept. 20, 2017) (adjudicating, *inter alia*, Plaintiff's request for declaratory judgment to "to enforce its lien against the Property through foreclosure").

    c) Breach of Contract

The Court next addresses Plaintiff's breach of contract claim, styled as a "judicial foreclosure" claim. First, Plaintiff must demonstrate the essential elements of a breach of contract action under Texas law: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (internal quotation marks omitted). "A breach occurs when a party fails to perform a duty required by the contract." *Smith Int'l*, 490 F.3d at 387 (internal quotation marks omitted).

Here, Decedent entered a Loan Agreement, which he secured with a Deed of Trust. The note allonge attached to the Loan Agreement states the loan amount as "$78,050." (Doc. 1-1 at 10). The deed of trust stipulates the principal sum of $78,050.80. (Doc 1-1 at 12). The total due payable under the Loan Agreement—assuming all payments were made as scheduled—shows $219841.20. (Doc. 1-1 at 2). As found above, (i) OneMain owns the Note and is the beneficiary of the Deed of Trust, and (ii) Plaintiff is the mortgage servicer for OneMain. Decedent defaulted on his obligations under the terms of the Loan Agreement. The Court takes as true that Decedent passed away intestate. At death, the debt became a part of the Decedent's estate. Tex. Est. Code Ann. § 101.051 ("A decedent's estate vests in accordance with Section 101.001(b) subject to the payment of, and is still liable for: (1) the debts of the decedent, except as exempted by law[]").

The Court takes as true that no probate is open for Decedent and that Defendants—as Decedent's heirs—acquired all of Decedent's interest in the Property, subject to the Loan Agreement and corresponding debt. Tex. Est. Code Ann. § 201.001(a-b) ("If a person who dies intestate does not leave a spouse, the estate to which the person had title descends and passes in parcenary to the person's kindred . . . [first] to the person's children and children's descendants").

The notices of default in the record were mailed to the Decedent's estate in accordance with the Loan Agreement and the Texas Property Code. The notices state the amount required to cure the default and further state:

> You have thirty (30) days from the date of this notice to pay us the Amount Required to Cure. This Cure Date is June 26, 2021.
> . . . .
> If we do not receive the Amount Required to Cure by the Cure Date listed above, or some loss mitigation alternative to foreclosure has not started, the Noteholder will accelerate all payments owing on your Note and require that you pay all payments owing and sums secured by the Security Instrument in full[]

(Doc 1-1 at 24). "The default was not cured" and Plaintiff effectively accelerated the maturity of the debt. (Doc. 1 at 5) ("The default was not cured, and the maturity if [sic] the debt is hereby accelerated by the filing of this lawsuit").[7] Plaintiff asserts that "all conditions precedent have been performed or have occurred for Plaintiff to enforce its security interest against the Property." (Doc. 1 at 5-6).

Taking Plaintiff's assertions as true and after review of the record, the Court must find and conclude Plaintiff has satisfied the elements of a breach of contract in showing that (i) there was a valid contract in the form of an executed promissory note; (ii) that Plaintiff fully performed under the promissory note; (iii) that Decedent failed to perform in paying under the loan agreement; and

---

[7] "Effective acceleration requires 'clear and unequivocal' notice of intent to accelerate and notice of actual acceleration." *Rabo Agrifinance Inc. v. Terra XXI Ltd.*, 257 F. App'x 732, 734 (5th Cir. 2007) (internal citation omitted).

(iv) Plaintiff sustained damages for the unpaid payments as a result of the breach. Accordingly, Plaintiff pleaded a meritorious breach of contract claim.

The Court must next determine whether Plaintiff may obtain a judicial foreclosure as a remedy to its breach of contract claim.

> To obtain a judicial foreclosure, a security interest holder must demonstrate that: "(1) a debt exists; (2) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (3) [the borrowers] are in default under the note and security instrument; and (4) [the borrowers] received notice of default and acceleration." *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013) (citing Tex. Prop. Code § 51.002), aff'd, 583 F. App'x 306 (5th Cir. 2014).

*Koncak v. Deutsche Bank Nat'l Tr. Co.*, No. 3:19-CV-00071-B-BT, 2020 WL 5219558, at *5 (N.D. Tex. Aug. 17, 2020), *report and recommendation adopted*, No. 3:19-CV-00071-B-BT, 2020 WL 5215128 (N.D. Tex. Sept. 1, 2020). Coupled with the Court's findings above, the record shows (i) a debt existed on the Property (ii) that was secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution[8]; (iii) Decedent is in default under the Note and security instrument; and (iv) Decedent—though his estate—received notice of default and acceleration at the address in the Loan Agreement. Accordingly, Plaintiff has demonstrated that it is entitled to relief on the subsumed breach of contract claim in its judicial foreclosure claim. For those reasons the Court GRANTS Plaintiff's Motion.

d) Attorney's Fees

Both Plaintiff's pleadings and Plaintiff's Motion request attorney's fees. Plaintiff's Motion specifically requests "reasonable and necessary" attorney's fees under Texas Civil Practice and

---

[8] Both the Loan Agreement and Deed of Trust expressly conform with Article 16, § 50(a)(6) of the Texas Constitution. (Doc. 1-1 at 14 ("It is the express intention of Lender and Borrower to structure this Extension of Credit to conform to the provisions of the Texas Credit Title, the Texas Finance Code and the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution."); (*See* Doc. 1-1 at 9); *see generally* TEX. CONST. art. XVI, §§ 50(a)(6).

Remedies Code §§ 37 and 38. Regarding declaratory judgments, Texas Civil Practice and Remedies Code § 37 states: "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Under Texas Civil Practice and Remedies Code § 38:

> A person may recover reasonable attorney's fees from an individual or organization other than a quasi-governmental entity authorized to perform a function by state law, a religious organization, a charitable organization, or a charitable trust, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract.

Tex. Civ. Prac. & Rem. § 38.001. Under Texas law, the award of attorney's fees is discretionary. *In re Dearborn Marine Serv., Inc.*, 499 F.2d 263, 288 (5th Cir. 1974); *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 604 (5th Cir. 2000) (discussing the same in declaratory judgment context). However, attorney's fees are mandatory "[i]f a party prevails in his or her breach of contract claim and recovers damages." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 (5th Cir. 2000) (citing *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997)).

Here, Plaintiff's Motion expressly states, "Plaintiff does not seek monetary damages." (Doc. 11 at 3). And, as discussed above, Plaintiff's Motion sought "judicial foreclosure" as relief, which the Court has granted hereabove. Thus, award of attorney's fees are not mandatory. *See Kona Tech*, 225 F.3d at 603. In its request for attorney's fees, Plaintiff explains:

> [t]he amount of such fees to be determined by subsequent motion practice. Plaintiff requests that the award of attorney's fees be made not as a money judgment against Defendants, but as a further obligation owed by the Duprees [sic] under the subject Note and Deed of Trust.

(Doc. 11 at 6). However, Plaintiff has—at no time—submitted any motion, declaration, or evidence regarding its attorney's fees. Plaintiff further fails to support its request—to add a further obligation to the Note and Deed of Trust as a result of an attorney's fees award—with any

authority, and the Court has found no such support. On this record, the Court declines to exercise its discretion to award attorney's fees.

## IV. CONCLUSION

For the reasons enumerated hereabove, the Court GRANTS Plaintiff's Motion for Default Judgment as to the subsumed breach of contract claim. By separate order, the Court shall enter a final judgment.

**SO ORDERED.**

24th day of February, 2023.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE